# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

James D. Hayden                                    CV-09-110-M-JCL

                Plaintiff,

      vs.                                    ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

_____

Plaintiff James Hayden (Hayden) brings this action under 42 U.S.C. §

405(g) seeking judicial review of the decision of the Commissioner of Social

Security (Commissioner) denying his application for disability insurance benefits

under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.

Hayden protectively filed his application for benefits on August 17, 2006,

alleging he became disabled on May 1, 2000 due to prostate cancer and side-

PAGE 1

effects of hormone treatment; limited motion and strength in his left shoulder; weak persistalisis with severe reflux & hiatal hernia with signs of chronic esophagitis & a small diverticulum. Tr. 127-132, 140-141, 171.  Hayden later amended his alleged onset date to December 15, 2006, to coincide with his last day of work.  Tr. 36.  Hayden's application was denied initially and on reconsideration.  Tr. 12.  After an administrative hearing at which Hayden appeared with counsel, an Administrative Law Judge found Hayden  was not disabled within the meaning of the Act.  Tr. 9-25.  The Appeals Council denied Hayden subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review.  Tr. 1-5.  Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Hayden was 59 years old when he filed his application for benefits in August 2006, and 62 years old at the time of the ALJ's decision.

## I.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

PAGE 2

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d

1152, 1156 (9th Cir. 2001).  This Court must uphold the Commissioner's findings

"if supported by inferences reasonably drawn from the record." *Batson v.*

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir.

2004).  "[I]f evidence exists to support more than one rational interpretation," the

Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. BURDEN OF PROOF

To establish disability, a claimant bears "the burden of proving an 'inability

to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months.'" *Batson*, 359

F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process.  20 C.F.R. § 404.1520.  The claimant bears

the burden of establishing disability at steps one through four of this process.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).    At the first step, the ALJ

will consider whether the claimant is engaged in "substantial gainful activity."  20

C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the

claimant has any impairments that qualify as "severe" under the regulations.  20

C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or

more severe impairments, the ALJ will compare those impairments to the

impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the ALJ

finds at step three that the claimant has an impairment that meets or equals a listed

impairment, then the claimant is considered disabled.  20 C.F.R. §

404.1520(a)(iii).  If, however, the claimant's impairments do not meet or equal the

severity of any impairment described in the Listing of Impairments, then the ALJ

must proceed to step four and consider whether the claimant retains the residual

functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. §

404.1520(a)(4)(iv).  If the claimant establishes an inability to engage in past work,

the burden shifts to the Commissioner at step five to establish that the claimant

can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

## III.  DISCUSSION

PAGE 4

Following the steps in the sequential evaluation process, the ALJ first found that Hayden had not engaged in substantial gainful activity since December 15, 2006, the alleged disability onset date.  Tr. 14.  The ALJ next found that Hayden suffered from the following medically determinable impairments: "stage D1 prostate gland cancer with pelvic radiation therapy from January 3, 2001, through March 1, 2001, and hormonal therapy from 2001 to the present, bilateral acromioclavicular joint arthropathy, and right glenohumeral joint arthropathy." Tr. 14.  However, the ALJ then found that those impairments, alone or in combination, did not meet or equal the severity of any impairment described in the Listing of Impairments.  Tr. 19.

The ALJ next determined that Hayden retains residual functional capacity (RFC) to perform a limited range of medium level work.  Tr. 20.  Having done so, the ALJ next turned to the fourth step in the sequential evaluation process and analyzed whether Hayden could engage in his past relevant work considering his RFC.  Tr. 23.  Relying in part on testimony provided by a vocational expert, the ALJ concluded that Hayden's impairments precluded him from returning to his past work as a heavy equipment mechanic either as that work was actually performed or as that work is performed in the national economy.  Tr. 23.

Because Hayden could not return to his past relevant work, the ALJ

PAGE 5

proceeded to the final step in the sequential evaluation process and concluded there were jobs in significant numbers in the regional and national economies that Hayden could perform consistent with his RFC, age, education and work experience.  Tr. 24.  Based on these findings, the ALJ concluded Hayden was not disabled, as defined in the Social Security Act, from December 15, 2006, through the date of the decision.  Tr. 25.

### A.  Severe Impairments

Hayden argues the ALJ erred at step two by assigning only one limitation to the use of his arms and not classifying his hip condition as a severe impairment.

An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 416.921.  An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work.  *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).  The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 416.908.

The record reflects that the ALJ thoroughly considered Hayden's shoulder impairment and limited him accordingly.  Specifically, the ALJ found that Hayden

was "limited in pushing and/or pulling in upper extremities and [could] not perform repetitious pushing and/or pulling with the upper extremities and cannot perform repetitious pushing and/or pulling with the upper extremities for an 8-hour work day."  Tr. 20.

Hayden claims he is not able to reach overhead with his right arm or reach out in front with his right or left arm for any period of time, and maintains the ALJ erred by not incorporating those limitations into his residual functional capacity assessment.  As discussed below, however, the  ALJ properly discredited Hayden's testimony, and having done so was not required to incorporate all the limitations to which Hayden testified.  And as the ALJ accurately explained when assessing Hayden's shoulder impairment, his allegations that he had "no ability to reach overhead with his right arm or to reach out in front with his left arm for a period of time [were] not consistent with the substantial evidence of record."  Tr. 22.

The record indeed reflects that Hayden's shoulder problems were documented as early as 1997, but he continued to work for another nine years.  Tr. 369, 372, 606-21.  Hayden has not pointed to any evidence indicating that his shoulder problems intensified shortly before he decided to leave work.  In fact, Hayden advised his physical therapist in September 2006 that his shoulder had

PAGE 7

been doing well, and was "pain free unless he perform[ed] vigorous work with it, such as splitting firewood and stacking it."  Tr. 652.  As the ALJ noted,  treating physician Dr. Susan Selbach wrote on September 15, 2006, a short time before Hayden stopped working, that he was physically able to work "with no restrictions."  Tr. 22, 483.   The upper extremity limitations the ALJ incorporated into Hayden's residual functional capacity are consistent with the physical capacity assessment completed by reviewing physician Dr. Schofield, and are otherwise consistent with the medical evidence of record.  Tr. 403-410.

Hayden also argues the ALJ should have classified his hip condition as a severe impairment.  Specifically, Hayden complains that the ALJ erred by relying on a CT scan from May 2000 that showed only mild deformity, and disregarding a more recent CT scan from October 9, 2008 that showed moderate osteoarthritic degenerative changes involving his right hip.  Tr. 664.

While the ALJ did not specifically discuss Hayden's October 9, 2008, CT scan, any error on his part in failing to do so was harmless.  The record reflects that the ALJ fully considered Hayden's complaints of disabling hip pain, as well as the related medical records, and substantial evidence support the ALJ's assessment as to the severity of Hayden's hip impairment.   For example, the ALJ noted that Hayden had not received treatment for hip pain since his alleged onset

PAGE 8

date, and observed that Hayden's treating physician never referred him to physical therapy for his hip pain.  Tr. 16.  The ALJ observed that Hayden's daily activities included chopping wood, target shooting, making household repairs, and grocery shopping  – all of which he found were inconsistent with Hayden's allegations of disabling hip pain.  Tr. 16-17.  Finally, the ALJ explained that "[d]espite [Hayden's] right hip pain, which appear[ed] to be unchanged since 2000, he was able to perform his duties of a heavy equipment mechanic that required continual stationary standing and walking" until December 2006.  Tr. 17.

### B.  Listed Impairments

Hayden next argues that the ALJ erred at step three by finding that his prostrate cancer did not meet or equal the criteria of Listing 13.24, for prostate gland carcinoma.

At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1.  "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies."  *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20

C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404. 1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F f.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

The listed impairment for prostate gland carcinoma requires the cancer to be either (A) Progressive or recurrent despite initial hormonal intervention, or (B) With visceral metastases (matastases to internal organs). 20 C.F.R. pt. 404, subpt. P, app. 1, § 13.24. Hayden argues that his prostate cancer has progressed despite initial hormonal intervention, and maintains that he thus satisfies the criteria for presumptive disability under this listing.

The ALJ discussed Listing 13.24 at length in his decision, and in doing so found that although Hayden "continues to have prostate cancer, his disease is not resistant to hormonal therapy and has fortunately remained stable." Tr. 20.

PAGE 10

Hayden argues otherwise, pointing out that his PSA levels spiked at times,  which he maintains was an indication that his cancer was progressing.  The ALJ recognized that Hayden's PSA levels had slightly increased in July 2006, but noted that by September 2006 they were normal again.  Tr. 19, 490.  The record indeed reflects that Hayden's PSA levels would spike at various times, but then drop again in response to continued treatment.  See e.g. Tr. 466, 631, 439, 662, 647.  The ALJ also found it significant that Hayden's treating urologist had "not indicated in any of his treatment notes that [Hayden's] cancer ha[d] progressed or recurred despite hormonal therapy..." Tr. 20.   Hayden has not shown that the ALJ erred by finding based on these records that his prostate cancer responded to hormonal treatment and did not satisfy the criteria of Listing 13.24(A).

To the extent Hayden argues the ALJ erred in finding no evidence of visceral metasteses to internal organs, as required by Listing 13.24(B), he is similarly mistaken.  As evidence that his cancer might have metastasized, Hayden points to the result of July 2007 x-ray.  Tr. 532.  The reviewing radiologist observed sclerosis at L-3, and suggested that "be evaluated for a possible sclerotic bone metastases and correlation made for any tumor history."  Tr. 532.  Hayden does not point to any evidence that he was subsequently diagnosed with bone metastases.  As the ALJ observed, Hayden's "whole body scan taken in May 2005

was noted to be normal by Dr. Kenneth High, a urologist, and [Hayden's] whole body scan taken in July 2007, was noted to be unchanged from the May 2005 scan." Tr. 20.

In any event, even if there had been bone metastasis, Hayden does not point to any evidence of visceral metastasis to the organs, as required by Listing 13.24(B). Although Hayden's cancer had spread to the regional lymph nodes by the time of his initial diagnosis, the regulations indicate that metastases to the regional lymph nodes is not sufficient to meet Listing 13.24, or any other Listing requiring distant metastases.  20 C.F.R. pt. 404, subpt P, app. 1, § 13.00(E)(1-2) (explaining that tumors that have "metastasized beyond the regional lymph nodes" usually meet the requirements of a listing, and that when there are no distant metastases, specific cancer listings like 13.24 may require that response to initial treatment be considered).   Section 13.00 suggests that metastases contemplated to meet a listing requires the spread of cancer beyond the regional lymph nodes. Substantial evidence supports the ALJ's decision that Hayden did not meet his burden of showing his cancer met or equaled listing 13.24.

## C.  Credibility

Hayden argues the ALJ failed to cite sufficiently clear and convincing reasons for finding his subjective testimony less than entirely credible.

PAGE 12

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis:  (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing  *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  The *Cotton* test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-1282 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-1408; 20 C.F.R. § 404.1529(a) and (b)).

If the *Cotton* test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  *Smolen*, 80 F.3d at 1284.  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester*

*v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

In assessing credibility the ALJ must also consider the factors set forth in

SSR 96-7p including:

1.  The individual's daily activities;

2.  The location, duration, frequency, and intensity of the
    individual's pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any
    medication the individual takes or has taken to alleviate pain or
    other symptoms;

5.  Treatment, other than medication, the individual receives or has
    received for relief of pain or other symptoms;

6.  Any measures other than treatment the individual uses or has
    used to relieve pain or other symptoms (e.g., lying flat on his or
    her back, standing for 15 to 20 minutes every hour, or sleeping
    on a board); and

7.  Any other factors concerning the individual's functional
    limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *See also* 20 C.F.R. § 404.1529(c).

The ALJ found that Hayden suffers from several severe impairments, each

of which could reasonably be expected to produce some degree of symptom.  Tr.

14.  Hayden thus made a showing sufficient to meet both prongs of the *Cotton*

test.

PAGE 14

The ALJ acknowledged Hayden's testimony as to the severity of his pain and limitations, but found him less than entirely credible for a number of reasons. First, the ALJ found that Hayden's credibility was "eroded because there is evidence he stopped working for reasons not related to the allegedly disabling impairment." Tr. 21.  Hayden argues the ALJ misconstrued the record, and claims he left work because he was physically unable to perform at the requisite pace. Dkt. 12, 14.  Hayden indeed testified at his hearing that he worked slowly, and stated that he decided to quit after his supervisor commented that "my wife can do that faster than you can." Tr. 43.

As the ALJ noted, however, the record contains ample evidence of a longstanding conflict between Hayden and his supervisor. Tr. 21.  In September 2006, Hayden reported to his doctor that he had temporarily stopped working from October 2005 until March 2006 because "[h]e had a conflict with his supervisor." Tr. 486, 21.  Hayden told his doctor that his supervisor was "younger than him and was condescending," and indicated he had filed a grievance against him at one point. Tr. 486.   The record also reflects that Hayden complained to a social worker a week before quitting about stress his supervisor caused him. Tr. 470.

The ALJ also pointed to other evidence indicating that Hayden left work for reasons other than his alleged impairments.  For example, the ALJ cited evidence

PAGE 15

indicating that Hayden had planned on retiring in January 2007.  Tr. 21.  Hayden

told his doctor shortly before he stopped working that he was "planning on

working until January and then doing something else."  Tr. 478.  And after Hayden

stopped working, he  told his doctor that he had "resigned his job" and "had a big

retirement party."  Tr. 464.   Hayden also contradicted himself during the hearing,

stating at one point that it was not his decision to leave, but indicating moments

later that he left due to "mental anguish and physical abuse" from his supervisor.

Tr. 43-44.  The ALJ properly cited evidence suggesting that Hayden had planned

on retiring and left work due to a conflict with his supervisor as one reason for

finding his testimony as to the disabling effect of his impairments less than

entirely believable.

        The ALJ cited several other reasons for finding Hayden not credible,

pointing for example to contradictions between Hayden's testimony and his daily

activities.  The ALJ began by recounting Hayden's complaints.  Hayden testified,

for example, that he could walk only 500 to 600 yards, could sit for only two hours

at a time, stand for 15-20 minutes and has no ability to reach overhead with his

right arm or reach out in front with his left arm.  Tr. 22.  As the ALJ recognized,

however, the record contains several references that suggest the claimant is

capable of greater activity than he alleges.  For example, Hayden chops, splits, and

PAGE 16

loads firewood, takes care of grandchildren, target shoots, and walks his dog.  Tr. 146-148, 698, 161-165, 457, 447, 455, 470.

The ALJ also cited contradictions between Hayden's testimony and the objective medical evidence as a reason for rejecting Hayden's complaints.  For example, the ALJ observed that despite his complaints of disabling hip pain, Hayden had not received any treatment for his hip pain since his alleged disability onset date in December 2006.  Tr. 16.  The record indeed reflects, as the ALJ found, that Hayden continued to work for several years despite what he now characterizes as a disabling hip impairment.  Tr. 17.

These constitute sufficiently clear and convincing reasons for finding Hayden's testimony as to the extent of his pain and limitations not entirely credible.

### D.  VA Disability Rating

As Hayden notes in his supporting brief, the Department of Veterans' Affairs (VA) assigned him a 100% disability rating effective in 2001.  Tr. 359-63.  To the extent Hayden argues the ALJ erred by not giving any weight to the 100% disability rating assigned him by the Department of Veterans' Affairs (VA), he is mistaken.

It is well-established in the Ninth Circuit that the ALJ must consider a VA

PAGE 17

disability rating.  *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002);

*Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694-695

(9th Cir. 2009).   In doing so, the ALJ must "ordinarily give great weight to a VA

determination of disability" due to "the marked similarity between these two

federal disability programs."   *McCartey*, 298 F.3d at 1076.  Nevertheless, while

"the ALJ must consider the VA's finding in reaching his decision," he is not

bound "to reach an identical result."  *McCartey*, 298 F.3d at 1076.  Because the

VA's criteria for determinating disability are different from those employed by the

SSA, "the ALJ may give less weight to a VA disability rating if he gives

persuasive, specific, valid reasons for doing so that are supported by the record."

*McCarty*, 298 F.3d at 1076.

    The Ninth Circuit's *McCartey* decision is consistent with the Social

Security Administration's (SSA) subsequent policy interpretation rulings.  *See*

SSR96-03p, 2006 WL 2329939.  As the SSA explains, "[b]ecause the ultimate

responsibility for determining whether an individual is disabled under Social

Security law rests with the Commissioner," the agency is "not bound by disability

decisions by other governmental and nongovernmental agencies," including the

VA.  SSR 96-03p *7.  While the ALJ need not reach the same result, he should

nevertheless "explain the consideration given" to another agency's disability

PAGE 18

determination in the notice of decision.  SSR 96-03p *7.

The ALJ in this case acknowledged Hayden's VA disability rating, but declined to give it great weight based upon his review of the medical and other evidence of record.  Tr. 20-21.  While the VA issued its disability rating in 2003, Hayden continued to work for three more years.  At the time of his decision in 2008, the ALJ had the benefit of reviewing three years of additional medical evidence that was not available to the VA.  *Valentine*, 574 F.3d at 695 (acquisition of new evidence not available to the VA may provide a proper basis for according little weight to a VA disability rating.) .

Hayden's VA disability rating was founded on his prostrate cancer diagnosis and the symptoms he suffered from cancer treatment.  Tr. 360.  The ALJ noted that Hayden's cancer has remained stable since he received his VA disability rating.  The ALJ also noted that there is "no evidence the hot flashes, one of claimant's main side effects of his hormonal treatment, or other side effects alleged by the claimant would keep him from working."  Tr. 22.  The ALJ's assessment is consistent with the fact that Hayden continued to work for three years after he received his disability rating, as well as  Dr. Selbach's assessment that Hayden could perform job duties that require continual lifting of 20 pounds and frequently lifting 40 pounds.   Tr. 489.

PAGE 19

### D.  Medical Opinions

Hayden argues the ALJ should have given more weight to an August 6,

2007, letter that Dr. Guth wrote in support of Hayden's application for disability

insurance benefits.

A treating physician's opinion is entitled to greater weight than that of an

examining physician on the basis that he has a "greater opportunity to observe and

know the patient."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  An

examining physician's opinion in turn "carries more weight than a reviewing

physician's."  *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  The

weight given a treating or examining physician's opinion depends on whether it is

supported by sufficient medical data and is consistent with other evidence in the

record.  20 C.F.R. § 404.1527(d)(2).

To discount the controverted opinion of a treating physician, the ALJ must

provide "'specific and legitimate reasons' supported by substantial evidence in the

record."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v.

Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  Among the situations in which the ALJ

must cite such specific and legitimate reasons is when a treating physician's

opinion is contradicted by a nontreating physician, and the nontreating physician's

opinion is not based on independent clinical findings, or is based on the same

PAGE 20

information used by the treating physician. *Andrews*, 53 F.3d at 1041.  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Guth treated Hayden from December of 2000 to July 2004.  On August 1, 2007 Hayden asked Dr. Guth to submit a letter in support of his application for disability benefits.  Tr. 551.  On August 6, 2007 Dr. Guth wrote a letter stating that Hayden's "cancer and the side effects of the Lupron have made it very difficult for [him] to work," and indicated that "with his medical problems, he should be strongly considered for SSI."  Tr. 550.

The ALJ provided specific reasons, supported by the record, for rejecting Dr. Guth's opinion.[1]  Specifically, the ALJ found that "Dr. Guth's statements are not supported by his treatment records from when he actually treated [Hayden] nor are they consistent with the fact that [Hayden] work[ed] for many years after being diagnosed with prostate cancer and receiving radiation therapy."  Tr. 22.  The medical and other evidence discussed by the ALJ throughout his decision indeed reflects that Hayden demonstrated an ability to work for several years after being

---

[1]  Because Dr. Guth's opinion was contradicted by that of Dr. Selbach, Tr. 483, the ALJ could reject it for specific and legitimate reasons.

diagnosed with prostate cancer and undergoing treatment.

And as the ALJ also noted, Dr. Selbach had treated Hayden since 2005 and had never indicated that the side effects from any of Hayden's medications would prevent him from performing basic work-related activities.  Tr. 22.  To the contrary, Dr. Selbach wrote in July 2006 that Hayden could work, and that his "only physical limitation [was] lifting 20 pounds overhead."  Tr. 493.  In September of 2006, Dr. Selbach stated that Hayden could "return to work with no restrictions."  Tr. 483.

The ALJ cited sufficiently specific and legitimate reasons for rejecting Dr. Guth's letter opinion, and instead giving more weight to Dr. Selbach's more recent opinions.

### F.  Vocational Expert Testimony

Finally, Hayden argues the ALJ erred by finding he was not capable of returning to his past relevant work as a heavy equipment mechanic – which is identified as medium level work in the Dictionary of Occupational Titles (DOT) – but was capable of performing other medium level jobs in the same general field.  In Hayden's view, this step five determination is inconsistent.  Hayden is mistaken.

While the DOT classifies the job of a heavy equipment mechanic as

PAGE 22

medium-level work, the VE testified that the reality is "that anybody who works on heavy equipment is going to have to lift more than 50 pounds with some regularity, and certainly would have to exert more than 50 pounds of exertion to work and moving things around and that kind of thing." Tr. 78.  As Hayden similarly described it, his prior work as a heavy equipment mechanic over the years involved lifting up to 100 pounds, which would constitute heavy rather than medium-level work.  Tr. 154.   Based on the VE's testimony, the ALJ found that Hayden was not capable of returning to his past relevant work either as it is generally performed or as he actually performed it over the years.  Tr. 23.

But the fact that the ALJ found Hayden incapable of performing his past relevant work, which the VE and Hayden both described as something more than medium-level work, does not necessarily mean he was precluded from all medium-level occupations.   As the Commissioner points out, the entire purpose of obtaining vocational expert testimony is for the ALJ to hear from an expert on such matters as to what type of work, if any, a hypothetical individual with the claimant's vocational profile and functional limitations can perform.  The vocational expert testified on this precise point, and stated that although Hayden could not perform his past specific job, a person with his residual functional capacity could perform  medium level work as lubrication service person and

PAGE 23

front-end mechanic.  Tr. 81-85.  The ALJ properly found, based on the VE's testimony, that although Hayden could not return to his past relevant work as a heavy equipment mechanic, there were other jobs existing in significant numbers in the national economy that Hayden could perform.

Although Hayden testified that his employer allowed him to attempt lighter level work, the VE explained that even as accommodated, that work was above light level exertion.  Tr. 77.  Presumably because the VE agreed that Hayden's modified position  "would be accommodated work," the ALJ did not consider it as past relevant work for purposes of his step four analysis.[2]  Tr. 77.  *See eg, Pena v. Apfel*, 1999 WL 155699, *2 (N.D. Calif. 1999) (quoting *Eback v. Chater*, 94 F.3d 410, 412 (8th Cir. 1996)( "[w]hether or how an employer might be willing, or required, to alter job duties to suit the limitations of a specific individual is not relevant because Social Security's 'assessment must be based on broad vocational patterns...rather than on any individual employer's practices.'" ).  Regardless of whether or not Hayden could return to that accommodated position, the ALJ

_____

[2]  Had he done so, he likely would have found Hayden capable of returning to the modified position, which the ALJ described as involving more than light-level work.  Tr. 77.  As discussed above, the ALJ properly discredited Hayden's testimony to the extent he claimed he stopped working because he was physically incapable of performing his modified job duties.  In doing so, the ALJ instead credited evidence of record indicating that Hayden stopped working because he had a longstanding conflict with his supervisor and wanted to retire.

proceeded to step five and properly found based on the VE's testimony that there were a number of jobs that he could perform given his residual functional capacity for a limited range of medium-level work.

**IV.  CONCLUSION**

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error.  Therefore,

IT IS ORDERED that Hayden's  motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the Commissioner's decision is affirmed.

DATED this 28th day of April, 2010

 /s/ Jeremiah C. Lynch              
Jeremiah C. Lynch
United States Magistrate Judge